IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NO. 3:17-cv-646

TAGHREED D. TUTAH,

    **Plaintiff,**

v.

CAMDEN DEVELOPMENT, INC.,

    **Defendant.**

**ORDER**

**THIS MATTER** is before the Court on the Motion to Dismiss (Doc. No. 5) filed by Defendant Camden Development, Inc. ("Camden"). Plaintiff Taghreed Tutah ("Tutah") has responded, and Defendant has filed a reply. This matter is now ripe for adjudication.

For the following reasons, Defendant's Motion is granted in part, denied in part.

## I. BACKGROUND

According to the Complaint, Tutah began her employment with Camden in 1998, serving as a Property Manager. On or about September 9, 2013, Tutah applied for leave under the Family Medical Leave Act in order to receive treatment for "psychiatric and physical medical conditions caused by changes at her job implemented by management." While Tutah was on leave, she was the subject of a "pointed investigation" by Camden. As a result, Tutah's credibility and authority were undermined and her medical information was shared with her co-workers.

The Complaint alleges that, upon returning to work, Tutah was disciplined for "simple mistakes in paperwork going back several years," even though she had never been disciplined

1

previously. Tutah's supervisors also did not initiate any conversations with her about her need for an accommodation. Nonetheless, she continued her employment without incident until February 2016.

Tutah alleges that, in February 2016, she informed her supervisor and human resources that she needed to apply for FMLA leave again. Her supervisor, Connie Farr, then instructed her that there was no need to file for FMLA. Tutah also repeatedly informed Connie Farr and human resources of her difficulties performing the essential functions of her job and of her need for an accommodation, but Camden failed to investigate Tutah's complaints.

Tutah claims that her medical conditions "substantially limit multiple major life activities including the ability to handle excessive stress." But despite her conditions, she "was able to perform her job functions and had previously received favorable reviews." Tutah was instructed to work from home from February 18 through February 23, 2016, and she complied. Tutah was then instructed to work at the corporate office on February 24, 2016, and she again complied. On or about February 25, 2016, Tutah was asked to work at two other properties even though she had previously informed Camden of a doctor's appointment scheduled for that morning. On that day, Tutah was terminated for "alleged employee misconduct."

On September 21, 2017, Tutah filed this Complaint in North Carolina state court, alleging: (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"); (2) wrongful harassment and termination based on age and handicap in violation of North Carolina public policy as set forth in the North Carolina Equal Employment Practices Act ("NCEEPA"); (3) wrongful harassment and terminated based on disability in violation of North Carolina public policy, as set forth in the North Carolina Persons with Disabilities Protection Act ("NCPDPA"); (4) and negligent infliction of emotional distress ("NIED").

On November 2, 2017, Camden removed the lawsuit to federal court. Camden subsequently filed this Motion to Dismiss all of Tutah's claims on November 9, 2017. After Camden filed its Motion to Dismiss, Tutah voluntarily dismissed its first claim for relief under the ADA on November 27, 2017. Accordingly, this Order only addresses the three remaining counts under Camden's Rule 12(b)(6) motion.

## II. STANDARD OF REVIEW

When faced with a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court "assume[s] the[] veracity" of these factual allegations, and "determine[s] whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000). Thus, to survive a motion to dismiss, the complaint or counterclaim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

### A. Wrongful Discharge (NCEEPA)

North Carolina is an employment at-will state, meaning that "in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party." *Kurtzman v. Applied Analytical Indus., Inc.*, 493 S.E.2d 420, 422 (N.C. 1997). However, there is a "public-policy exception" to the

employment-at-will rule. *Id.* An employee may accordingly bring a wrongful discharge claim if the employee was discharged "(1) for refusing to violate the law at the employers request, (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy." *Ridenhour v. IBM Corp.*, 512 S.E.2d 774, 778 (N.C. Ct. App. 1999) (internal citations omitted).

Here, Tutah alleges that she was harassed and ultimately terminated because of her "age and handicap" contrary to North Carolina public policy as enumerated in the North Carolina Equal Employment Protection Act ("NCEEPA"). NCEEPA states, in relevant part, "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2.

North Carolina courts have adopted the same standards of proof and burden-shifting analysis in state law wrongful discharge discrimination cases as in federal discrimination cases. *N.C. Dep't of Corr. v. Gibson*, 301 S.E.2d 78, 82, 85 (N.C. 1983). Thus, in order to state a plausible claim for wrongful discharge based on age or disability discrimination, a plaintiff must allege sufficient facts that the defendant's conduct was motivated by plaintiff's age or disability. *Moser v. Driller's Serv., Inc.*, 988 F. Supp. 2d 559, 563, 565 (W.D.N.C. 2013). This can be demonstrated by alleging direct or circumstantial evidence supporting a discriminatory motive, or by alleging facts to support a prima facie case of discrimination through the *McDonnell Douglas* burden-shifting framework. *Id.* at 563. A prima facie case requires allegations that: (1) the plaintiff is a member of a protected class, (2) that the plaintiff suffered an adverse employment action, (3) that the plaintiff was performing at a level that met his or her employer's

4

legitimate expectations at the time of the adverse action, and (4) either that the plaintiff was replaced by a similarly qualified applicant outside of the protected class, or that similarly situated employees outside of the protected class were not subjected to the adverse action. *Id.* at 564.

### i. Age Discrimination

Tutah's claim for wrongful discharge based on age discrimination—though largely devoid of detail—states a plausible claim for relief. The Complaint does not allege sufficient facts for a prima facie case under the *McDonnell Douglas* framework, as the Complaint does not ever state Tutah's age or allege that she was a member of a protected class. Nor does it allege that after she was terminated a younger individual took her place, or that younger employees who were otherwise similarly situated were not terminated. The Complaint does, however, allege that Tutah was "informed by co-workers that a supervisor with Defendant was attempting to terminate [Tutah] so that she could be replaced by a younger individual who would earn less and thus save the Defendant money." (Am. Compl., 5). Although this is an allegation based on hearsay, assuming the factual content to be true—as the Court must at this stage—it is a sufficient "age-related comment" made before Tutah's employment was terminated that qualifies as direct proof of discrimination. *See Hardin v. Belmont Textile Mach.*, 355 F. App'x 717, 721 (4th Cir. 2009) (stating that "age-related comments" are direct proof of discrimination).

Thus, in spite of the bare-bones nature of the allegation, the Court must find that the Complaint states a plausible claim for wrongful discharge based on age discrimination.

### ii. Discrimination Based on Disability

Tutah's claim for wrongful discharge based on disability discrimination, on the other hand, fails to allege a plausible claim for relief. Unlike the claim for age discrimination, the

5

Complaint contains no factual allegations showing direct or circumstantial evidence of discrimination.

The Complaint also fails to allege a prima facie case of discrimination based on disability. The first requirement of a prima facie claim is that the plaintiff is a member of a protected class. Here, the class is persons with a handicap. N.C. Gen. Stat. § 143-422.2. NCEEPA does not define the term "handicap," so this Court must "consider other North Carolina statutes which relate to the same subject manner" in order to ascertain the legislative intent behind the word. *McCullough v. Branch Banking & Trust Co.*, 524 S.E.2d 569, 574 (N.C. Ct. App. 2000). Specifically, North Carolina courts have held that the definition of "disability" in the North Carolina Persons with Disabilities Protection Act (the "NCPDPA")—previously known as the "North Carolina Handicapped Persons Protection Act"—provides guidance for the NCEEPA's term "handicap." *See, e.g.*, *id.*; *Baucom v. Cabarrus Eye Ctr., P.A.*, No. 1:06CV00209, 2007 WL 1074663, at *7 (M.D.N.C. Apr. 4, 2007). The NCPDPA defines the term "[p]erson with a disability" as "any person who (i) has a physical or mental impairment which substantially limits one or more major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." N.C. Gen. Stat. § 168A-3(7a).

Tutah alleges that she has "medical conditions" that "substantially limit multiple major life activities including the ability to handle excessive stress." (Am. Compl., 3). While she was able to perform her job functions in spite of her medical conditions, she alleges that she needed to "avoid excessive stress." (*Id.*). Tutah does not state what her medical conditions are, nor does she allege that she is limited in any way other than being unable to handle excessive stress. Although she claims that handling stress is a "major life activity," what constitutes a major life activity is a question of law, not of fact. As defined in the NCPDPA, major life activities include

"caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, eating, sleeping, lifting, bending, standing, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as "the operation of a major bodily function." N.C. Gen Stat. § 168A-3(7a)(b). The plain language of the statute does not support Tutahs's position that the inability to "handle excessive stress" at work, without more specific limitations, is a substantial limitation of a major life activity. And neither Tutah nor this Court has identified any cases finding that the ability to handle excessive stress is a major life activity. Thus, Tutah has not sufficiently alleged that she is a member of a protected class under NCEEPA.

Accordingly, the Court finds that the Complaint fails to state a plausible claim for relief with respect to wrongful discharge based on disability discrimination.

### B. NCPDPA

Tutah next alleges harassment and termination in violation of the NCPDPA. In relevant part, the NCPDPA makes it an unlawful discriminatory practice "to discharge, or otherwise to discriminate against a qualified person with a disability on the basis of a disabling condition with respect to compensation or the terms, conditions, or privileges of employment." N.C. Gen Stat. § 168A-5(a)(1).

As stated above, Tutah has failed to allege sufficient facts to qualify as a "person with a disability" under the NCPDPA. Thus, this claim for relief must be dismissed for failure to state a claim. Further, as Camden notes in its memorandum, the NCPDPA has a statute of limitations that requires all civil actions regarding employment discrimination under the NCPDPA to be brought "within 180 days after the date on which the aggrieved person became aware of or, with reasonable diligence, should have become aware of the alleged discriminatory practice or prohibited conduct." N.C. Gen. Stat. § 168A-12. According to the Complaint, Tutah's

employment was terminated on February 25, 2016, but she did not file suit until September 21, 2017. Tutah makes no allegations in her Complaint that she became aware of a discriminatory intent for her termination after she was discharged and within the relevant statute of limitations, nor does she even contest Camden's argument that this claim is time-barred in her memorandum in response to the Motion to Dismiss.

Thus, the Court finds that Tutah's claim under the NCPDPA must be dismissed for failure to state a plausible claim for relief.

### C. Negligent Infliction of Emotional Distress

Tutah's final claim for relief is a claim of negligent infliction of emotional distress ("NIED"). In order to state a cause of action for NIED, "a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Baucom*, 2007 WL 1074663, at *5 (internal citations and alterations omitted).

In support of this claim, Tutah alleges that Camden "had actual knowledge that [she] was having serious psychological issues and continued to move [her] and limit her staff support in an attempt to get [her] to quit," conducted a "systematic campaign" of undermining her in order to force her to quit, and denied her support when she requested help from human services. (Am. Compl., 8). Accordingly, she endured "tremendous stress," "suffered professional and personal diminished standing amongst her coworkers and peers," and "suffered emotional distress." (*Id.*, 6–8).

Tutah's allegations fail to state a valid claim of NIED. Although the sufficiency of her claim is dubious with respect to all three elements, it is most clear that her Complaint is deficient

with respect to the third element: the conduct caused severe emotional distress. The term "severe emotional distress" means "any emotional or mental disorder, such as for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 395 S.E.2d 85, 97 (N.C. 1990). Tutah does not allege that she suffered from any recognized and diagnosable emotional or mental disorder as a result of Camden's allegedly negligent acts. Rather, she merely makes a conclusory statement that she suffered emotional distress. This is not sufficient to state a claim for relief for NIED.

Accordingly, the Court finds that Tutah's claim for NIED must be dismissed for failure to state a plausible claim for relief.

## IV. CONCLUSION

For the foregoing reasons, the Court orders that Defendant's Motion to Dismiss is **GRANTED IN PART, DENIED IN PART**. The following claims are hereby dismissed with prejudice:

1. Plaintiff's claim for wrongful discharge based on disability under the NCEEPA;
2. Plaintiff's claim under the NCPDPA; and
3. Plaintiff's claim for NIED.

   **SO ORDERED**.

Signed: May 29, 2018

Graham C. Mullen
United States District Judge